Quarles & Brady LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391
TELEPHONE 602.229.5200

Lauren Elliott Stine (#025083)
Lauren.Stine@quarles.com
Christian G. Stahl (#029984)
Christian.Stahl@quarles.com
Kristen M. Arredondo (#34052)
Kristen.Arredondo@quarles.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AZ DP Holdings, LLC, a Nevada limited liability company, Item 9 Labs Corp., a Delaware corporation, and I9 IP Holdings, LLC, an Arizona limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Sara Gullickson, an individual,<br><br>Defendant. | NO.<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |

Plaintiffs AZ DP Holdings, LLC ("DP Holdings"), Item 9 Labs Corp. ("INLB"), and I9 IP Holdings, LLC ("INIP") (collectively "Plaintiffs"), for their complaint against defendant Sara Gullickson ("Gullickson"), allege as follows:

**<u>NATURE OF THE ACTION</u>**

1.    This action arises out of Ms. Gullickson's misappropriation of Plaintiffs' trade secrets and conversion of Plaintiffs' property following her departure as the chief executive officer of INLB.

2.    Plaintiff INLB is medical cannabis company that offers comfortable cannabis health solutions to consumers.  INLB has a growing asset portfolio, which

QB\172300.00001\60720872.6

consists of multiple brands and businesses that offer various solutions to medical cannabis consumers and other stakeholders.

3.      One of INLB's assets, Plaintiff INIP, is an intellectual property holding company that holds a number of INLB's assets.

4.      Another of INLB's assets, Plaintiff DP Holdings (d/b/a Dispensary Permits), is a consulting firm that offers strategic license application and compliance services to individuals and businesses in the cannabis industry. Among other things, Dispensary Permits offers its clients a technology platform that houses an extensive digital library of cannabis licensing and business planning resources. The assets of the Dispensary Permits business were previously owned by Ms. Gullickson and her company, Arizona DP Consulting LLC.

5.      On or about November 26, 2018, Plaintiffs entered into an Asset Purchase Agreement (the "APA") with Ms. Gullickson and AZ DP Consulting LLC, pursuant to which Plaintiffs acquired virtually all of the assets of AZ DP Consulting LLC, including but not limited to

6.      On or about November 26, 2018, Plaintiff INLB and Defendant Gullickson entered into an Employment Agreement, pursuant to which Defendant Gullickson also became the CEO of INLB.  Defendant Gullickson resigned from INLB on or about November 15, 2019.

7.      Just after her resignation and departure from INLB, however, Ms. Gullickson stole, nefariously transferred, copied, and/or deleted hundreds of thousands of

1  trade secret and proprietary documents from Plaintiffs' digital library housed on the

2  DropBox electronic platform.   Ms. Gullickson also interfered with and restricted

3  Plaintiffs' access to their trade secret and property documents on DropBox.

4        8.      Among other things, Ms. Gullickson's conduct violates state and federal

5  laws that preclude individuals and entities from misappropriating trade secrets and

6  constitutes unlawful conversion of Plaintiffs' property.   Plaintiffs now seek injunctive

7  relief to prevent Ms. Gullickson from her ongoing theft and misappropriation of Plaintiffs'

8  trade secrets and seek damages related thereto.

9                          **THE PARTIES**

10       9.      Plaintiff DP Holdings is an Arizona limited liability company with its

11 principal place of business located at 2727 N. 3rd Street, Suite 201, Phoenix, AZ 85004.

12 DP Holdings is a wholly-owned subsidiary of Plaintiff INLB.

13       10.     Plaintiff INLB is a publicly traded Delaware corporation with its principal

14 place of business located at 2727 N. 3rd Street, Suite 201, Phoenix, AZ 85004.

15       11.     Plaintiff INIP is an Arizona limited liability company with its principal

16 place of business located at 2727 N. 3rd Street, Suite 201, Phoenix, AZ 85004.

17       12.     Defendant Sara Gullickson is a resident of Phoenix, Arizona.

18                      **JURISDICTION AND VENUE**

19       13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and

20 18 U.S.C. § 1836.   The civil action alleged arises under the laws of the United States,

21 including an Act of Congress relating to the protection of trade secrets.   This Court has

22 supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a).

23       14.     This Court has personal jurisdiction over Ms. Gullickson because she is

24 domiciled in the State of Arizona and has had significant and continuous contacts in

25 Arizona.

26       15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391

27 because, among other things, Ms. Gullickson resides in this judicial district, and she has

28 engaged in the conduct giving rise to Plaintiffs' claims within this judicial district.

QB\172300.00001\60720872.6

1

2

**FACTUAL ALLEGATIONS**

**INLB's Business**

3    16.    INLB is a medical cannabis company founded in 2010. INLB operates in

4    multiple United States markets through its diverse asset portfolio.

5    17.    INLB's portfolio includes brands and businesses offering cultivation and

6    production, unique retail products, licensing and compliance services, and various other

7    products and services for consumers and stakeholders in the medical cannabis industry.

8    18.    INLB's mission is to facilitate wellness by creating comfortable cannabis

9    health solutions for the modern consumer.

10    **INIP**

11    19.    INIP is a wholly owned subsidiary of INLB and the holder of various

12    intellectual property assets of the INLB portfolio.

13    **The Dispensary Permits Business**

14    20.    Looking to expand its portfolio, INLB teamed up with Ms. Gullickson in

15    mid-2018. At that time, Ms. Gullickson owned and operated the Dispensary Permits

16    business through her company, Arizona DP Consulting LLC.

17    21.    Dispensary Permits offers consulting services to clients seeking assistance

18    navigating the regulatory, compliance, and licensing aspects of the medical marijuana

19    industry in various states.

20    22.    A key component of the business is the extensive digital DropBox archive

21    of proprietary client resources, templates, documentation, and best practices.

22    23.    On November 26, 2018, INLB, DP Holdings, Arizona DP Consulting LLC,

23    and Ms. Gullickson entered into the APA.

24    24.    Pursuant to the APA, DP Holdings acquired all—except those expressly

25    excluded—of Arizona DP Consulting LLC's assets used in connection with the

26    Dispensary Permits business.

27    25.    Among other things,

28    ████████████████████████████████████████████████████████

QB\172300.00001\60720872.6

1

2

3

4      26.

5            **Plaintiffs' Use of Cloud Services and Its Security Features**

6      27.    Plaintiffs use cloud services, and specifically, DropBox, to facilitate the

7  movement and storage of documentary information used in connection with the

8  Dispensary Permits business.

9      28.    DropBox boasts layers of security features as well as administrative controls

10  that limit folder access to only specially-designated employees.

11      29.    DropBox also can generate detailed reports showing activity on the account,

12  including transfers, deletions, additions, timestamps, IP addresses, and various other

13  information.  Essentially, the DropBox Account can track everything that happens on it.

14      30.    As a result, Plaintiffs' Dispensary Permits DropBox account (the

15  "DropBox" or the "DropBox Account") contained and contains Plaintiffs' trade secrets,

16  including but not limited to:

27      31.    In addition to the DropBox and internal information technology security

28  protocols Plaintiffs use, Plaintiffs restrict access to specific documents on the DropBox

QB\172300.00001\60720872.6

- 5 -

Account for those that need to know or need to use and limit such use of the documents to the required task.

**Ms. Gullickson's DropBox Access as CEO of INLB**

32.    During her tenure as CEO of INLB, Ms. Gullickson had access to almost every facet of INLB's business, including all confidential and trade secret information, including access to the DropBox materials.

33.    Unbeknownst to Plaintiffs, even though they had purchased the entirety of Ms. Gullickson's business under the APA, including information on the DropBox Account, upon information and belief, Ms. Gullickson secretly retained control of the DropBox Account through some other means of DropBox access in addition to her access as INLB's CEO.

34.    Moreover, even though Ms. Gullickson ████████████████, she kept administrative control of the DropBox Account and partitioned off several parts for her own personal use.

35.    Indeed, the DropBox Account included folders purporting to contain Ms. Gullickson's personal files such as personal tax information, personal photographs, and her mother's personal files.

36.    Until her departure from INLB, Plaintiffs were unaware of Ms. Gullickson's secret administrative control and personal use of the DropBox Account.

**Ms. Gullickson Tenure as CEO ends and She Locks Plaintiffs Out of the Drop Box and Steals Plaintiffs' DropBox Files**

37.    Ms. Gullickson's employment with INLB ended on November 15, 2019.

38.    Four days later, on November 19, 2019—and after she was no longer an employee of INLB—Ms. Gullickson suspended all of Plaintiffs' clients' and employees' access to DropBox, and she began transferring, copying, and/or deleting hundreds of thousands of files containing Plaintiffs' confidential, proprietary, and trade secret information.

QB\172300.00001\60720872.6

39.     Ms. Gullickson also transferred hundreds of thousands of files wholesale from Plaintiffs' client and operating folders into her "personal" folders.

40.     On November 20, 2019, when Plaintiffs demanded that Ms. Gullickson restore Plaintiffs' access and discontinue deleting and transferring files, Ms. Gullickson obliged but demanded that Plaintiffs provide her with her "personal" files, now replete with Plaintiffs' confidential and trade secret information, to which Plaintiffs refused.

41.     On November 22, 2019, Plaintiffs became aware of multiple email addresses accessing, transferring, and deleting files on the DropBox account.  The main email address, sara.gullickson@gmail.com, was previously used by Ms. Gullickson during her employment at INLB.

42.     When the sara.gullickson@gmail.com email address was prevented from further access, another email address that was previously unknown to Plaintiffs, dispensarypermits123@gmail.com, continued the transfers and deletions.

43.     Upon information and belief, the dispensarypermits123@gmail.com email address is associated with Ms. Gullickson.

44.     In total, 132,062 files were deleted and nearly 1.4 million files were transferred to unknown media at unknown locations.

45.     The sheer volume of transfers indicates that many of the files were transferred or copied at least twice.

46.     From November 19, 2019 to November 22, 2019, Plaintiffs did not have access to the DropBox Account or its files.  Instead, Ms. Gullickson was holding it hostage and only allowed Plaintiffs' clients access to their specific client files.

47.     On November 25, 2019, Plaintiffs regained access to the DropBox Account and began recovering the deleted files.

48.     On December 4, 2019, Ms. Gullickson once again unlawfully entered the DropBox Account and changed the administrative passwords, locking Plaintiffs out of the account.

**Ms. Gullickson Is Misappropriating Plaintiffs' Trade Secrets**

49.     A significant portion of the materials on the DropBox Account is highly valuable to Plaintiffs and would be extremely valuable to a competitor in the medical cannabis industry.

50.     Disclosure of the DropBox materials would allow competitors, including Ms. Gullickson when her non-compete expires in a few months, to directly compete with Plaintiffs and/or gain a competitive edge, because she would not need to invest the time and money into developing or re-developing the information contained within the documents.

51.     Moreover, the information is not generally known to the public, and its disclosure would allow Ms. Gullickson or third-parties to proceed in the permitting process without purchasing information, templates, and consultation services from Plaintiffs, thereby creating competitors of Plaintiffs' own clients.

52.     ███████████████████████████████████████████████████████████████████████████ is valuable from not being generally known because it contains all the trial and error, mistakes, and successes that give Plaintiffs an edge in helping their clients obtain permit approval.

53.     ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

54.     The highly sensitive information from every client project serviced by Plaintiffs, including ███████████████████████████████████████████████████

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████ that would give competitors

an edge in competing with Plaintiffs and their clients for permits.

55.    Plaintiffs' confidential and secret ████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████ If this information were generally known, it would give competitors an

edge to compete with Plaintiffs in the consultation business for permitting as well as make

it more difficult for Plaintiffs' clients to succeed in obtaining the limited permits.

56.    Plaintiffs ████████████████████████████████
████████████, and they have continued to expand, develop, and contribute to

the DropBox content over the past year.

57.    Each client's file in the DropBox required significant time and effort to

develop and would be exceptionally difficult to recreate.

58.    To that end, Plaintiffs make numerous efforts to maintain the secrecy of the

materials in the DropBox account and to restrict its access and use. For example,

Plaintiffs: (1) keep administrative access to the account to a very limited group of

executive managers; (2) only allow the information to be accessed by other employees in

limited sets and for limited times; (3) restrict customer and client access only to the

customer's relevant files; (4) require customers (of both its template documentation

business and its consultation business) to sign license and use agreements restricting their

use and dissemination of acquired information; and (5) require employees to maintain

confidentiality of this information as part of their employment.

59.     Plaintiffs' access to the DropBox materials has now been restored, but Ms. Gullickson has retained access to the account and has copied, deleted, and/or transferred hundreds of thousands of files containing Plaintiffs' trade secrets as noted above.

60.     At all times after November 15, 2019, Ms. Gullickson was not an employee or agent of INLB and had no right or authority to access, copy, or delete any of Plaintiffs' DropBox Account files.

61.     Ms. Gullickson's actions and usurpation of Plaintiffs' DropBox has been and continues to be detrimental and damaging to their business.

62.     Moreover, Ms. Gullickson's theft of Plaintiffs' confidential and trade secret information provides a competitive advantage to Ms. Gullickson, to which she is not entitled.

63.     ███████████████████████████████████████████████████████████
█████████████████████████████████████████. Ms. Gullickson no longer works for Plaintiffs, and she no longer has a right to access the materials Plaintiffs bought from her.

## COUNT I: Misappropriation of Trade Secrets Pursuant to Arizona Uniform Trade Secret Act, A.R.S. §§ 44-401 to 407

64.     Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations above.

65.     Ms. Gullickson has in her possession and has access to Plaintiffs' confidential, proprietary, and trade secret information.

66.     Plaintiffs take reasonable steps to keep the information Ms. Gullickson misappropriated secret and to restrict its access and use.

67.     This information is all valuable because it is not generally known and it would allow competitors to directly compete with Plaintiffs and/or gain a competitive edge.

QB\172300.00001\60720872.6

68.     Accordingly, Ms. Gullickson has in her possession Plaintiffs' information that is properly defined as a trade secret under the Arizona Uniform Trade Secret Act, A.R.S. §§ 44-401 to 407.

69.     While employed by INLB, Ms. Gullickson had access to the above confidential and proprietary information to perform her job duties as CEO and run all facets of the company.

70.     Ms. Gullickson acquired access to Plaintiffs' trade secret information under circumstances giving rise to a duty to maintain the secrecy of or to limit the use of the confidential and proprietary information she acquired from Plaintiffs.

71.     At the time Ms. Gullickson initially had access to Plaintiffs' trade secret information, she owed a duty, as CEO, to Plaintiffs to maintain its secrecy and to limit the use of the information.

72.     Ms. Gullickson exceeded her authorized access to Plaintiffs' trade secret information by, among other things, accessing, transferring, deleting, and/or copying the trade secret information described above after she was no longer employed at INLB and instructed to return all INLB material as part of her separation agreement.

73.     Ms. Gullickson exceeded her authorized access to Plaintiffs' trade secret information by, among other things, taking steps to transfer Plaintiffs' trade secret information from Plaintiffs' DropBox account to other unknown media and locations for purposes of personally retaining trade secret information after she separated from Plaintiffs.

74.     Ms. Gullickson's actions constitute improper acquisition of trade secrets in violation of Arizona's trade secret act.

75.     Plaintiffs are entitled to compensatory damages and injunctive relief as a result of Ms. Gullickson's conduct.

76.     Upon information and belief, Ms. Gullickson will use the information to compete with Plaintiffs, as she did prior to her employment with Plaintiffs, in the area of cannabis permitting consultation, assistance, and acquisition of cannabis licenses.

77.     Upon information and belief, the trade secret information Ms. Gullickson retained has value to Ms. Gullickson in her new endeavor.

78.     Ms. Gullickson willfully and maliciously acquired Plaintiffs' trade secrets, entitling Plaintiffs to exemplary damages and attorneys' fees in accordance with A.R.S. § 44-403 and § 44-404.

79.     Ms. Gullickson's actions have unjustly enriched her.

80.     Ms. Gullickson's continued possession of and access to Plaintiffs' confidential, proprietary, and trade secret information is causing irreparable injury to Plaintiffs for which there is no adequate remedy at law.

81.     Plaintiffs will continue to suffer harm until its property is returned and Ms. Gullickson is enjoined from using, accessing, or distributing the same.

## COUNT II  - Misappropriation of Trade Secrets Pursuant to Defend Trade Secret Act, 18 U.S.C. §§ 1836 *et. seq.*

82.     Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations above.

83.     Ms. Gullickson has in her possession and access to Plaintiffs' confidential, proprietary, and trade secret information.

84.     Plaintiffs take reasonable steps to keep the information Ms. Gullickson misappropriated secret and to restrict its access and use.

85.     Plaintiffs' trade secrets are used in connection with products and services used in and intended to be used in interstate commerce.

86.     This information is all valuable because it is not generally known and it would allow competitors to directly compete with Plaintiffs and/or gain a competitive edge.

87.     Accordingly, Ms. Gullickson has in her possession Plaintiffs' information that is properly defined as a trade secret under the Defend Trade Secret Act, 18 U.S.C. § 1839(3).

QB\172300.00001\60720872.6

88.     While employed by INLB, Ms. Gullickson had access to the above confidential, proprietary, and trade secret information to perform her job duties as CEO and run all facets of the company.

89.     Ms. Gullickson acquired access to Plaintiffs' trade secret information under circumstances giving rise to a duty to maintain the secrecy of or to limit the use of the confidential and proprietary information she acquired from Plaintiffs.

90.     At the time Ms. Gullickson initially had access to Plaintiffs' trade secret information, she owed a duty, as CEO, to Plaintiffs to maintain its secrecy and to limit the use of the information.

91.     Ms. Gullickson exceeded her authorized access to Plaintiffs' trade secret information by, among other things, accessing, transferring, deleting, and/or copying the trade secret information described above after she was no longer employed at INLB and instructed to return all INLB material as part of her separation agreement.

92.     Ms. Gullickson exceeded her authorized access to Plaintiffs' trade secret information by, among other things, taking steps to transfer Plaintiffs' trade secret information from Plaintiffs' DropBox account to other unknown media and locations for purposes of personally retaining trade secret information after she separated from Plaintiffs.

93.     Ms. Gullickson's actions constitute improper acquisition of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et. seq.*

94.     Plaintiffs are entitled to compensatory damages and injunctive relief as a result of Ms. Gullickson's conduct.

95.     Upon information and belief, Ms. Gullickson will use the information to compete with Plaintiffs, as she did prior to her employment with Plaintiffs, in the area of cannabis permitting consultation, assistance, and acquisition of cannabis licenses.

96.     Upon information and belief, the trade secret information Ms. Gullickson retained has value to Ms. Gullickson in her new endeavor.

97.     Ms. Gullickson willfully and maliciously acquired Plaintiffs' trade secrets, entitling Plaintiffs to exemplary damages and attorney fees in accordance with Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(C) and (D).

98.     Ms. Gullickson's actions have unjustly enriched her.

99.     Ms. Gullickson's continued possession of and access to Plaintiffs' confidential, proprietary, and trade secret information is causing irreparable injury to Plaintiffs for which there is no adequate remedy at law.

100.   Plaintiffs will continue to suffer harm until its property is returned and Ms. Gullickson is enjoined from using, accessing, or distributing the same.

## COUNT III - CONVERSION

101.   Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations set forth above.

102.   Upon information and belief, Ms. Gullickson wrongfully converted Plaintiffs' confidential, proprietary, and/or trade secret information by transferring, copying, and deleting Plaintiffs' confidential, proprietary, and/or trade secret from the DropBox account to other unknown accounts and media and using the information to her personal benefit and/or others.

103.   At all relevant times, the information on the DropBox account was Plaintiffs' property that Ms. Gullickson did not have authorization to use, access, destroy, transfer, or retain after her employment relationship with Plaintiffs ended.

104.   Plaintiffs have been damaged and continue to be damaged by Ms. Gullickson's wrongful conversion.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against Defendant as follows:

A.      Adjudicating that Ms. Gullickson has misappropriated Plaintiffs trade secrets;

QB\172300.00001\60720872.6

- 14 -

B.      Awarding Plaintiffs compensatory damages for Ms. Gullickson's acquisition, disclosure, or misuse of Plaintiffs' confidential, proprietary, or trade secret information;

C.      Awarding Plaintiffs enhanced damages and their actual attorney fees;

D.      Awarding preliminary and permanent and injunctive relief against Ms. Gullickson, and all those acting in concert with her, from continued and future use of Plaintiffs' confidential, proprietary, and trade secret information;

E.      Granting such other and further relief as the Court deems just and proper.

## **DEMAND FOR A JURY TRIAL**

Plaintiffs hereby demand a trial by jury in this action on all claims and issues triable before a jury.

RESPECTFULLY SUBMITTED this 10th day of December 2019.

QUARLES & BRADY LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391

By:*/s/ Christian G. Stahl*
Lauren Elliott Stine
Christian G. Stahl
Kristen M. Arredondo

*Attorneys for Plaintiffs*